UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HORACIO UFFRE, JR., | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 08-134-P-H |
| UNITED STATES OF AMERICA, | ) Civ. No. 09-513-P-H |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Horacio Uffre, Jr. has filed a 28 U.S.C. § 2255 motion seeking relief from his guilty-plea conviction and 150-month sentence for conspiring to distribute and possess heroin and 50 grams or more of cocaine base. Uffre did not take a direct appeal. He now complains that his defense attorney[1] did not perform adequately under the Sixth Amendment in three respects and that his sentence was unreasonable because of the disparity between crack and powder cocaine sentences. I recommend that the Court deny Uffre § 2255 relief for the reasons that follow.

*Discussion*

The Prosecution Version in Uffre's one-count offense is as follows:

August 15, 2007 Controlled Delivery of Cocaine Base
      On August 15, 2007 a cooperating informant (CI) told a Maine Drug Enforcement Agency special agent that he/she had been approached by "J.R.", later identified as the defendant, about trafficking in crack cocaine. According to the CI, the defendant offered to front the CI crack cocaine on credit. The CI then placed a recorded call to the defendant and the two eventually arranged for a drug transaction to take place at 8:00 p.m. that evening. During this call, the defendant

---

[1] Uffre actually had two attorneys but one of the attorneys, Neale Duffett, although ever present, acted as local counsel and did not substantively address the Court during the change of plea and sentencing hearings. Although the resolution of this case would be the same even if I addressed the claims as if they were distinct as to each attorney, as this Court is well aware, it was Attorney Robert Race who pulled the laboring oar in articulating Uffre's defense to the court during the change of plea and sentencing proceedings.

told the CI that he would send another person to deliver the drugs. The CI was searched, fitted with a transmitter and directed to the pre-determined meet location at the pre-determined time. Approximately two hours after the pre-determined time, surveillance agents spotted a sedan, operated by Jake Demakis, pull up in the area where the CI had been scheduled to meet with the person sent by the defendant. The CI met with Demakis in Demakis' vehicle. A short time later, the CI returned to the area where agents were waiting and turned over approximately 8 grams of an off-white chunky substance appearing to be cocaine base. The CI said that he/she received the drugs directly from Demakis. The CI also said that Demakis told him/her that he/she would have to come up with the money for the drugs soon.

August 20, 2007 Payment to Demakis

On August 20, 2007, the CI placed a monitored and recorded telephone call to the defendant to arrange to pay him back for the drugs that Demakis had fronted him/her on August 15, 2007. A few hours later, the CI was monitored as he/she met with Demakis and paid him $700.00 in pre-recorded funds. After the payment to Demakis was made, Demakis was surveilled as he drove away and was eventually pulled over. A consent search of Demakis' vehicle revealed the $700.00 just paid to him.

August 20, 2007 Search of 48A Pepperell Street

Based upon this and other information, agents obtained a state search warrant to search 48A Pepperell Street in Saco, which was the address where Demakis and the defendant had been residing. Among the items recovered during that search were the following:

- 1,808 sealed cellophane packets all containing heroin (net weight 75 grams) hidden in a bag of rice in a lower kitchen cabinet;
- 1,651 tied corner bags all containing cocaine base (net weight 423.6 grams) recovered from an upstairs bedroom occupied by the defendant;
- 49 tied bag corners all containing cocaine base (net weight 33.2 grams) recovered from a second upstairs bedroom occupied by Demakis;
- hat with name 'Demakis' printed on back recovered from first floor bathroom;
- letter dated August 16, 2007 mailed by ME Secretary of State to Horacio Uffre, Jr at 48A Pepperell Street recovered from the living room table;
- money counting machine recovered from top of refrigerator;
- dozens of rubber bands and plastic baggies and two digital scales;
- Verizon Wireless and Time Warner cable bills addressed to Horatio Uffre at 48A Pepperell St. recovered from upstairs bedroom occupied by the defendant;
- electric bill made out to Horatio Uffre at 48A Pepperell St., Saco;
- court documents relating to Demakis recovered from the upstairs bedroom occupied by Demakis;
- Ruger .22 MKII firearm (bearing serial number 213-58952) and bullet proof vest recovered from the upstairs bedroom occupied by Demakis; and

>    - large wooden sign with name 'Demakis' carved into it recovered from the upstairs bedroom occupied by Demakis.
>
>    The cocaine base recovered on August 15, 2007 and August 20, 2007, as well as the heroin recovered on August 20, 2007, were examined by a forensic chemist. These examinations resulted in positive tests for those controlled substances. The evidence would show that the street value of the quantity of cocaine base and heroin recovered during the course of the above referenced search of 48A Pepperell Street was approximately $140,000 (one hundred forty thousand dollars) and that this amount of drugs is indicative of distribution. The evidence would also show that the defendant and Demakis had been residing at 48A Pepperell Street since the beginning of 2007 and that they had been selling cocaine base and heroin to local customers throughout that time. Some of the proceeds generated from those drug sales during the course of the conspiracy were brought back to New York by the defendant. Other proceeds were wired back to New York by both the defendant and Demakis.

(Prosecution Version at 31, Crim. No. 08-134-P-H, Doc. No. 31.)  Uffre confirmed to this Court that this was an accurate description of his involvement in the conspiracy at his change of plea hearing.  (Rule 11 Tr. at 8-10, Crim. No. 8-134-P-H, Doc. No. 50.)

### A.  Uffre's Sixth Amendment Challenges to His Attorneys' Representation

The First Circuit has explained with respect to the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) Sixth Amendment standard:

>    The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." It is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, <u>United States v. Wade</u>, 388 U.S. 218 (1967), including at sentencing. <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977) (holding that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel").
>    The touchstone for any ineffective assistance of counsel claim is the two-part test laid down by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668(1984).
>        First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> Id. at 687. In other words, defendant "must show that counsel's performance was so deficient that it prejudiced his defense." United States v. Ademaj, 170 F.3d 58, 64 (1st Cir.1999) (summarizing Strickland). As the Strickland Court explained, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

United States v. Colon-Torres, 382 F.3d 76, 85 -86 (1st Cir. 2004).  Apropos Uffre's contention that he received bad advice concerning his decision to plead guilty, the Colon-Torres Panel expanded:

> In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied Strickland 's two-part test to ineffective assistance of counsel claims in the guilty plea context. Id. at 58 ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 58-59.

Id. at 86.

When a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).   As Strickland noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690.

### 1. *Drug Weight and Possession and the Decision to Plead Guilty*

With regards to his first ineffective assistance argument, it is Uffre's contention that counsel advised him to plead guilty even though there was no direct evidence that Uffre had

4

bought, possessed, or distributed drugs. (Sec. 2255 Mot. at 2.) He maintains that the bedroom in which the drugs were found was not Uffre's but was a common area used by a number of guests and inhabitants. (Id. at 3.) He insists that the evidence against him on drug quantity was limited to his co-conspirator Demakis's version of events that was motivated by the hopes of a U.S.S.G. 5K1.1 substantial assistance departure. (Id.)[2]

While some of the drugs referenced in the prosecution version were found in Demakis's room and the kitchen, Uffre's prosecution version clearly articulated that 1,651 tied corner bags all containing cocaine base (net weight 423.6 grams) were recovered from an upstairs bedroom occupied by Uffre. There was also substantial evidence of Uffre's extensive involvement with the controlled buys and his dominion over the searched premises as reflected by the several business/utility bills addressed to him. Uffre told the court at his change of plea hearing that he had read the prosecution version, there was nothing in it that he disagreed with, and that the information was true to Uffre's personal knowledge. (Rule 11 Tr. at 9, Crim. No. 08-134-P-H, Doc. No. 50.)

In an objection to the PSI, Uffre's attorney asserted that the drugs found in the apartment should not be attributed to Uffre because their discovery was beyond the scope of the relevant

---

[2] As this Court is well aware having presided over both cases, Demakis received a 68-month sentence on the drug conspiracy charge and a 34-month consecutive sentence on possession of the firearm count. United States v. Demakis, Crim. No. 08-125-P-H. The unsealed portions of the public docket now reflect that the United States filed a motion in Demakis's case to relax Local Rule 111, indicating there that Demakis appeared before the grand jury on June 25, 2008, and at that point executed a plea agreement. (Mot. to Relax Loc. R. 111 at 1, Doc. No. 8.) The grand jury indicted Uffre on that date. On February 3, 2009, the United States filed a motion to continue the sentencing date, indicating that Demakis continues to cooperate with the United States and was expected to testify at a contested sentencing hearing in Uffre's case. (Feb. 3, 2009, Mot. Continue at 1.) That motion was originally under seal but was unsealed on July 7, 2009. Sentencing was rescheduled a second time on March 19, 2009. On May 18, 2009, the United States filed a motion for limited unsealing of the plea agreement and a motion to seal this motion for limited unsealing. (Docket. No. 22.) That motion indicated that Demakis was set to testify per the plea agreement against Uffre and that the United States needed to disclose the plea agreement to Uffre's counsel. Uffre was sentenced on May 22, 2009, and Demakis did not testify because of the withdrawal of the defense request for evidentiary findings. Demakis having been sentenced on June 3, 2009, this motion was unsealed on July 7, 2009. The plea agreement and the motion to seal it were unsealed on September 2, 2009.

conduct. (See Rev. PSI at 14.)   He stressed that Uffre was not in the State of Maine when the search warrant was executed. (Id.)   However, by the time the defense team reached the sentencing hearing, it withdrew the request for an evidentiary hearing on the drug (and firearm) objections.  (Sentencing Tr. at 4.)[3]

With respect to drug quantity, the prosecutor opined at the sentencing: "The amount of crack involved in this case, Your Honor, is simply staggering.  It's staggering anywhere in the country but particularly here in Maine. This is an enormous amount of crack over that period of time. And justice demands that a harsh sentence be imposed[.]"  (Id. at 5.)   Defense counsel countered:

> And the statement by [the prosecutor that] Mr. Uffre was responsible for kilograms, there was no testimony, no puffing, adding the report, there's just basically no -- there's nothing in the report that would show anything is reliable with respect to the quantity. And I think the Government is overstating the position about flooding the streets and trying to, I guess, inflame the Court into imposing a harsher sentence upon Mr. Uffre.   Mr. Uffre, other than this involvement where the matter was dismissed in New Hampshire four years ago, that's his only history.

(Id. at 6-7.)

So that was the drug quantity narrative at the sentencing stage of Uffre's criminal case. And there is nothing in Uffre's 28 U.S.C. § 2255 motion that explains how counsel could have challenged Uffre's connection to the drug quantities attributed to his conspiracy had he not pled guilty.  Surely Uffre's attorney had no control over Demakis's early decision to cooperate with the United States and at that point the die was cast for Uffre.  Short of convening an evidentiary hearing, I cannot definitively describe defense counsel's strategic thinking but it is pretty plain from a objective reading of the records in Uffre's and Demakis's criminal cases that there was an

---

[3]   The pre-sentence conference held February 10, 2009 (Docket No. 40) has not been transcribed.

obvious benefit to Uffre's pleading guilty; indeed, Uffre did achieve the three-level acceptance of responsibility reduction which resulted in a substantial lowering of his sentencing range. Furthermore, it is clear that counsel considered mounting a drug quantity challenge at sentencing and reached a conclusion that this was not the best course, a decision that obviously took into account the availability of Demakis to testify on behalf of the United States.  This Court is best positioned to judge what impact Uffre's insistence on a drug quantity evidentiary hearing might have had on its sentencing determination,  see McGill, 11 F.3d at 225, but, with respect to the performance prong of Strickland, I cannot divine from Uffre's 28 U.S.C. §2255 motion  or the record of Uffre's and Demakis's criminal cases how defense counsel could be faulted under Sixth Amendment jurisprudence for counseling his client to plead guilty and forsake a challenge to drug quantity attribution in the hopes of securing the acquiescence of the prosecution and the PSI preparer to recommendations of the acceptance of responsibility reductions.

## 2.  *Gun Enhancement and Uffre's Eligibility for the Safety Valve*

With regards to Uffre's gun enhancement, he argues that the gun in question was sold to Demakis and was found in Demakis's bedroom in a zipped bag owned by Demakis.  Uffre maintains that he had third-party sources willing to back Uffre's description of ownership, but counsel did not put this information in front of the court.  He maintains that under Bailey v. United States, 516 U.S. 137 (1995) he would not be susceptible to the enhancement as he only had access to the firearm.  (Sec. 2255 Mot. at 4.)

The Revised PSI acknowledges that the gun in question was located in Demakis's bedroom at the time of the search.  (Rev. PSI ¶¶ 5, 18.) It also notes that Uffre and Demakis lived together at this location for more than six months prior to the search and that the two were in daily contact.  (Id. ¶ 18.)   It observes vis-à-vis the defense's second objection to the report:

7

> The defendant argues he is not responsible for the firearm found in Demakis' bedroom.  He asserts only Demakis should be held accountable to that weapon. The defendant notes that, if he succeeds in this argument, he reserves the right to argue that § 5C1.2 (Safety Valve) should be applied in his guideline calculations.
> The firearm was found in the house shared by the defendant and Demakis. Because this was a jointly undertaken criminal activity and the firearm was kept in the same location where the drugs were stored, the Probation Office believes the two-level enhancement under § 2D1.1(b)(1) is warranted [see § 2D1.1, comment . n.3)].

(Id. at 14-15.)  At sentencing the Court clearly was aware that the weapon was identified with Uffre's co-conspirator.  (Sentencing Tr. at 12.)   Indeed, while Uffre was not charged with a separate firearm count, Demakis was, and he was sentenced to a consecutive sentence for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1), the same statute at issue in Bailey.  Uffre's exposure was under U.S.S.G. § 2D1.1 and the application of this sentencing guideline does not require a jury determination of "active employment."

Uffre's final discontent with counsel's performance relates to the failure to argue for safety-valve consideration. He maintains the prosecuting attorney offered him the safety-valve but Uffre's attorney rejected the offer despite the knowledge that Uffre was qualified.  (Sec. 2255 Mot. at 5.)   As the United States points out, there is not a lick of evidence that the United States 'offered' Uffre a safety-valve and if the prosecutor did it would not have bound the court.

The Court explained vis-à-vis its sentencing determination:

> Your lawyer has correctly observed that here there's a mandatory minimum sentence of 10 years that the Court cannot go below. He's urged me to depart from the guideline range, the bottom of which, as I just said a moment ago, is 168 months. I'm going to come down somewhat, and I'll explain that in a moment. I'm not going to come all the way down to the 10 years. And among the reasons for that decision are these:
> This was a very, very serious drug trafficking conspiracy, as you well know. There are something like 1800 bags of heroin, 1800 ecstasy pills, and then

>    the powder and the crack that was involved. The crack alone would provide the
>    10-year mandatory minimum. I think something more is necessary in light of the
>    seriousness of the activities that you were involved in, the fact that there was a
>    weapon with your coconspirator.
>       So I'm going to go higher than that, but I'm going to come off somewhat
>    because I do recognize that the crack/powder difference here still drives
>    sentencing guidelines in a way that is sometimes unduly restrictive on the -- or
>    unduly punitive on the crack as opposed to the powder range, and I'm going to
>    come down, therefore, to 150 months to reflect that difference in the
>    crack/powder disparity. But – and also the fact that this is your first conviction
>    aside from the marijuana possession when you were a teenager.

(Sentencing Tr. at 11-12.)

Once again, with respect to measuring the potential prejudice, the sentencing judge is best placed to make that assessment, McGill, 11 F.3d at 225, but I could discern nothing in the transcript of the sentencing hearing that would lead me to believe that a variant sentence favorable to Uffre was in the cards even if the defense was not hindered by 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(a)(2).  Because of drug quantity, Uffre's guideline range was 168 to 210 months so there was little advantage to arguing for a safety valve reduction below the ten-year statutory minimum.   And, as remarked above with respect to the strategic decision not to contest drug quantity and the firearm enhancement, it was of no small moment that Uffre obtained the three-point acceptance of responsibility reduction and secured the Court's willingness to go below the guideline range in arriving at a 150-month sentence.[4]

---

[4]   In addressing the safety valve claim, the United States reflects on this balancing act:
     [B]y ceasing his challenges to relevant conduct that supported both the drug quantity calculations
     and the firearm enhancement, defense counsel strategically all but assured that Uffre would remain
     eligible for the three-level reduction for acceptance of responsibility. Such strategic decisions are
     especially immune from review in § 2255 proceedings. [Phoenix v.] Matesanz, 233 F.3d [77,]82-
     83 [(1st Cir. 2000)]. If defense counsel had not prevailed on the drug-quantity and firearm
     challenges after an evidentiary hearing, it is not at all clear that Uffre would have received the
     three-level reduction after falsely denying relevant conduct. See USSG § 3E1.1(a)-(b) &
     comment. (n.1). Under that scenario, Uffre's Guideline range would have been 235 to 293 months,
     rather than 168 to 210 months — a more than five year difference even at the low end.

### B. Crack to Powder Cocaine Ratio

Uffre's second 28 U.S.C. § 2255 ground turns on the disparate ratios between crack and powder cocaine under the sentencing guidelines.  As Uffre did not take a direct appeal, there is a sound basis for rebuffing his effort to obtain 28 U.S.C. § 2255 review of this straight-up sentencing challenge.  See  United States v. Frady, 456 U.S. 152, 166-68 (1982); Singleton v. United States, 26 F.3d 233, 239 (1st Cir.1994).   Waiver of the right to a direct appeal was not part of Uffre's plea agreement and the Court expressly informed Uffre that he had a right to appeal his sentence, that there was a ten-day window for doing so,  and that the Clerk of the Court would file the notice of appeal for him if he so requested.  (Sentencing Tr. at  15-16; see also Rule 11 Tr. at 12.)[5]

With regards to the crack cocaine versus powder disparity, this Court specifically noted -- as set forth in the excerpt of the sentencing transcript reproduced above -- that the "crack/powder difference" can be "unduly punitive" in crack cases.  (Sentencing Tr. at 12.) Uffre cites to Rita v. United States, 551 U.S. 338 (2007) and Gall v. United States, 552 U.S. 38 (2007) as well as testimony in front of a United States Senate Committee of an Assistant Attorney General for the proposition that this Court had discretion to sentence him outside the guideline range.  (Sec. 2255 mot. at 7-8.)  See also  Kimbrough v. United States, 552 U.S. 85 (2007).   Assuming that this is a cognizable § 2255 claim, it is abundantly clear from the record that this Court was well

---

(Mot. Summ. Dismissal at 23.)

[5]     The United States also adds that this is a sub-constitutional claim and, for that reason, is not cognizable in a 28 U.S.C. § 2255 proceeding.

10

aware if its discretion under the recent United States precedents in arriving at the sentence imposed.[6]

## Conclusion

For the reasons stated above, I recommend that the Court deny Uffre 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Uffre files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 3, 2010.

---

[6] The most recent of the cited trio, Kimbrough, was decided on December 10, 2007. The Court sentenced Uffre on May 22, 2009.